IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SCOTT T.,[1]                                             No.  3:22-cv-01660-HZ

                        Plaintiff,                       OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                        Defendant.


Kevin Kerr
Kerr Robichaux & Carroll
P.O. Box 14490
Portland, Oregon 97293

        Attorney for Plaintiff

Natalie K. Wight
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Richard V. Blake
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Scott D. brings this action seeking judicial review of the Commissioner's final

decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42

U.S.C. § 405(g). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on June 4, 2018, alleging an onset date of May 4, 2018. Tr. 10.[2]

Plaintiff's date last insured ("DLI") is December 31, 2023. Tr. 12. His application was denied

initially and on reconsideration. Tr. 10.

      On August 3, 2021, Plaintiff appeared with counsel for a hearing before an

Administrative Law Judge ("ALJ"). Tr. 28. On August 24, 2021, the ALJ found Plaintiff not

disabled. Tr. 22.  The Appeals Council denied review on August 25, 2022. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on "rectal cancer (in remission), side effects due to

cancer, diabetes, high blood pressure, high cholesterol, carpal tunnel syndrome (both arms),

[and] rotator cuffs tear." Tr. 170. At the time of his alleged onset date, he was 55 years old. Tr.

154. Plaintiff completed two years of college and has past relevant work experience as a project

director and project engineer. Tr. 171–172, 21.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative
record, filed herein as Docket No. 10.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id*.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id*.

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other

work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets

their burden and proves that the claimant can perform other work that exists in the national

economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity after his alleged onset date. Tr. 12. Next, at steps two and three, the ALJ determined that

Plaintiff has the following severe impairments: "status-post colon cancer; status-post laminotomy

for lumbar degenerative disc disease; status-post bilateral carpal tunnel syndrome release

surgery; status-post arthroscopic surgery for a torn rotator cuff on the left; and obesity." Tr. 12.

However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the

severity of a listed impairment. Tr. 13. At step four, the ALJ concluded that Plaintiff has the

residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a)

with the following limitations:

> no more than occasional balancing, stooping, crouching, crawling, kneeling, or
> climbing of ramps and stairs. He would be precluded from climbing ropes,
> ladders, or scaffolds, and would be limited to no more than frequent overhead
> reaching with his left upper extremity, and to no more than frequent bilateral
> handling or fingering. He would need to avoid concentrated exposure to
> temperature extremes and vibrations. Due to occasional episodes of unpredictable
> fecal incontinence, the claimant would need to have close and ready access to a
> restroom facility at all times.

Tr. 14. Because of these limitations, the ALJ concluded that Plaintiff could perform his past

relevant work. Tr. 21. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 21.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id*.; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

### I.     Symptom Testimony

Plaintiff argues that the ALJ erred in rejecting Plaintiff's symptom testimony.[3] Pl. Br. at 15. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order

---

[3] Although Plaintiff's brief uses the term "credibility evaluation," this opinion will use terminology consistent with SSA regulation 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304, at *1 (as amended).

to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff worked for 34 years at a structural engineering and manufacturing firm. Tr. 42. He held various positions during his employment, including worker, Supervisor II, and Area Manager. Tr. 42, 189. Some of Plaintiff's responsibilities included managing "staffing needs for area consisting of average of 50 to 125 employees," hiring employees, conducting "annual performance reviews as needed," and creating quarterly budgets for assigned areas. Tr. 191. Plaintiff was frequently required to lift over 20 pounds, walk, stand, and reach in the performance of his job. Tr. 191–193. In 2009, Plaintiff was diagnosed with colon cancer and was subsequently treated with surgery, radiation, and chemotherapy. Tr. 227. In 2018, Plaintiff underwent left-shoulder surgery, and carpal tunnel release surgeries on each wrist. Tr. 632, 408, 619. Plaintiff was fired from his job in 2018 and has not worked since. Tr. 43.

Plaintiff challenges the ALJ's discounting symptoms associated with his status-post colon cancer. Pl. Br. at 16. Plaintiff's symptoms include chronic rectal pain resulting from radiation-treatment burns and uncontrolled fecal incontinence. *Id* at 16–17. He testified that radiation burns are "really bad" and that he cannot sit or stand for long periods of time. Tr. 44. Regarding fecal incontinence, Plaintiff stated he cannot "hold it like normal people," and that he would have to go home, shower, and change clothes as a result of accidents. Tr. 44–45. Plaintiff testified that he is no longer able to keep up with housework, hunt, or engage in activities outside the house as he was once able. Tr. 180, 221, 224, 242.

The ALJ gave two reasons for discounting Plaintiff's subjective symptom testimony: (1) lack of support from the objective medical evidence; and (2) Plaintiff's activities of daily living. Tr. 16–19. Although the Court agrees the ALJ erred in assessing the medical evidence, such error was harmless, as the ALJ sufficiently supported his decision with other substantial evidence within the record.

### A. Medical Evidence

The ALJ stated that Plaintiff's subjective symptom testimony was inconsistent with objective medical evidence in the record. Tr. 16. To support his conclusion, the ALJ first points to Plaintiff having been "cancer free/in remission throughout the current period of adjudication." Tr. 16. However, Plaintiff testified his rectal pain specifically comes from the radiation *treatment* for his cancer. Pointing out that Plaintiff is now cancer free does not address his ongoing pain resulting from radiation treatment burns to his rectum. Nor does Plaintiff being cancer free address his fecal incontinence resulting from cancer surgery.

The ALJ relied on unrelated medical records to support discounting Plaintiff's rectal pain and fecal incontinence symptom testimony. The ALJ stated that "clinical exams typically

revealed normal sensation." Tr. 16. To support this assertion, the ALJ points to several places in the record that refer to normal neurological or clinical findings, specifically 2F p.15, tr. 318; 3F p.4, tr. 344; 7F p.5, tr. 490; 10F p. 17, tr. 553; and 12F p. 6, tr. 612.  However, an independent review of the record shows the clinical exams relied on by the ALJ were not associated with rectal pain or fecal incontinence, but with shoulder and wrist surgery recovery. For example, treatment records from a May 2018, show that Plaintiff's appointment was to review an MRI of his left shoulder, and that his left shoulder had "normal sensation to light touch is intact in all nerve groups." Tr. 316–318. Again, when seen for shoulder pain and a hand fracture in August 2018, the neurologic notes indicate "normal sensation to light touch is intact in all nerve groups." Tr. 344. During a June 2019 consultative exam, the doctor noted under the heading 'Sensory Exam' that Plaintiff was "grossly intact to light and deep touch" but fails to address whether this sensory exam was related in any way to Plaintiff's rectal pain. Tr. 490. Next, the ALJ refers to a clinical exam in January 2020, in which Plaintiff was seen for thyroid testing, medication management, and STD testing, but which has no reference to normal sensation, and in fact describes Plaintiff's rectal pain complaints. Tr. 553. Lastly, the ALJ points to an April 2019 visit following Plaintiff's carpal tunnel release surgery showing "normal sensation to light tough is intact in all nerve groups with slight paresthesia radial border." Tr. 612.

Finally, the ALJ mischaracterizes the record regarding Plaintiff's pain level by stating "in April 2021, the claimant decreased Dilaudid." Tr. 16. An ALJ "may not develop evidentiary basis of record 'by not fully accounting for the context of materials.'" *Christine M. R. v. Kijakazi*, 2021 WL 7285993, at *7 (C.D. Cal. Sept. 23, 2021) (*quoting Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). First, it is unclear whether Plaintiff intended to cut his dosage of Dilaudid, because the provider's note states simply, "[i]s cutting the Dilaudid in half, takes it

8 – OPINION & ORDER

morning and again in two hours, takes a whole pill when in severe pain." Tr. 687. Second, the

record shows Plaintiff's prescription for Dilaudid, including dosage and frequency, remained

unchanged through his last refill, after April 2021. Tr. 684, 696.  Lastly, the record shows

multiple past attempts by Plaintiff to wean from Dilaudid, with each attempt proving

unsuccessful due to rectal pain. *See, e.g.*, Tr. 443, 455, 464, 468.

## B.  Activities of Daily Living

Despite the errors identified above, the ALJ's decision regarding Plaintiff's symptom

testimony must be upheld because it is supported by substantial evidence. "So long as there

remains 'substantial evidence supporting the ALJ's conclusions on ... credibility' and the error

'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed

harmless and does not warrant reversal." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

1162 (9th Cir. 2008) (*quoting Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th

Cir.2004)).

Contradiction with a Plaintiff's activities of daily living is a clear and convincing reason

for rejecting a Plaintiff's symptom testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th

Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility

determination: (1) when activities meet the threshold for transferable work skills and (2) when

activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

However, "disability claimants should not be penalized for attempting to lead normal lives in the face

of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and "the mere fact that a

plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way

detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v.*

*Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity

has to be "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ

cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

In this case, the ALJ noted Plaintiff's function report from September 2018 stated he could "care for pets without assistance, prepare[] simple meals, went outside four to six days each week, drove, went out alone, shopped in stores, watched movies and used a computer with frequent changes of position when sitting, and engaged in daily face-to-face social activities." Tr. 19, 179–188. Plaintiff's February 2020 function report advised he "cared for his dogs with help from his children and son-in-law; that he made simple meals, cleaned, did laundry, made household repairs, ironed, mowed with breaks to sit or alleviate pain; and that he drove, went out alone, shopped in stores, watched television, and engaged in social activities with family members." Tr. 19. Additionally, despite claims that he is limited to making only short trips close to home, office treatment records from August 2020 note Plaintiff went on a hunting vacation to Enterprise, Oregon, a significant distance away from his home. Tr. 19, 702. Treatments notes from December 2020 describe that Plaintiff went hunting and was injured when he fell off his bike. Tr. 19, 698. Treatment notes from April 2021 show Plaintiff was treated for a cut to his hand from a saw. Tr. 714.

Furthermore, as the ALJ pointed out, Plaintiff's alleged onset date of May 4, 2018, has no medical significance, but instead relates to his date if termination from employment. Tr. 19. At the June 2019 consultative medical exam, Plaintiff explained to consultative physician, Dr. Resendiz, that he was "fired from his most recent work after elimination of the job by his employer." Tr. 19, 487. The ALJ points out that, although Plaintiff alleged termination from his employment due to excessive absenteeism resulting from his impairments at the hearing, he made no such statement to Dr. Resendiz. Tr. 19, 487. Finally, the ALJ points out that, despite unpredictable episodes of fecal incontinence, Plaintiff explained to the consultative medical

examiner that he "does not have to wear diapers." Tr. 16, 487. Indeed, throughout the record,

there is no mention of Plaintiff using diapers, nor is there a prescription for adult diapers by any

medical provider.

The above evidence is substantial. Therefore, the ALJ did not err in discounting

Plaintiff's subjective symptom testimony.

## II.      Medical Opinion Evidence

Plaintiff argues that the ALJ erred in rejecting the disabling opinion of treating Nurse

Practitioner, Rhonda Durant, FNP. For claims filed on or after March 27, 2017, ALJs are no

longer required to give deference to any medical opinion, including treating source opinions.

Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01

(Jan. 18, 2017); 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R.

§ 404.1520c(a). These are: supportability, consistency, relationship to the claimant,

specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important"

factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the

medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so,

the ALJ is required to explain how supportability and consistency were considered and may

explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more

medical opinions or prior administrative findings "about the same issue are both equally well-

supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is

required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even

under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as

unsupported or inconsistent without providing an explanation supported by substantial

evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

FNP Durant provided a medical statement on behalf of Plaintiff on July 5, 2021. FNP

Durant indicated that Plaintiff's medical conditions included "history of colon cancer resulting in

chronic rectal pain, type 2 diabetes, low back pain (lumbar stenosis w[ith] neuro claudication),

shoulder surgery/rotator cuff tear impingement, bilateral carpal tunnel." Tr. 720. According to

FNP Durant, Plaintiff's conditions result in "rectal pain with uncontrollable fecal incontinence

several times a day; multiple joint issues – low back, shoulders, wrists, neck; diabetes." Tr. 720.

She further noted Plaintiff could occasionally lift and carry less than ten pounds, stand and/or

walk for ten minutes and sit for 20 minutes at one time, and sit, stand, and/or walk less than two

hours in an eight-hour day. Tr. 19, 721. According to FNP Durant's RFC, Plaintiff can

"occasionally balance, stoop/bend, reach overhead, handle, finger, and feel and never climb,

kneel, crouch, crawl, or reach to shoulder height." Tr. 19, 721. FNP Durant opined Plaintiff

would be off task 20% of an eight-hour day and that his "concentration depends on his amount of

pain or sedation from meds." Tr. 722. Finally, FNP Durant opined that Plaintiff would miss at

least two workdays each month due to "sudden fecal incontinence requiring showering after" an

incident. Tr. 722.

The ALJ rejected FNP Durant's assessment as unpersuasive. Tr. 19. Specifically, the ALJ

noted that exams conducted during the relevant period were "consistently negative for significant

findings beyond transient increased symptoms at times." Tr. 19. The ALJ provided multiple

examples of clinical examinations to support this assertion. Tr. 479, 484, 555[4].   The ALJ stated

that FNP Durant's assessment of Plaintiff's manipulative restrictions was inconsistent with the

---

[4] The ALJ points to Tr. 553, however the examination begins on Tr. 555.

record showing Plaintiff's "good recovery status-post bilateral carpal tunnel release and left shoulder arthroscopy." Tr. 19. The ALJ rejected FNP Durant's statement that Plaintiff would "miss at least two days of work each [month] due to sudden fecal incontinence" as inconsistent with Plaintiff's statements to the consultative medical examiner that he "does not have to wear diapers." Tr. 19. The ALJ concluded that restrictions on sitting and postural restrictions opined by FNP Durant were "inconsistent with the August 2020 lumbar spine x-rays ordered by Dr. Kellogg, which revealed no more than mild degenerative changes of the lumbar spine and no abnormal subluxation with flexion or extension." Tr. 20.

Plaintiff argues the ALJ erred by "mischaracterizing the record, understating FNP Durant's treatment notes, and incorrectly claiming that [Plaintiff] had just mild low back impairments and symptoms following his original surgery." Pl. Br. at 10. However, Plaintiff does not point the Court to any statement of the ALJ to support this assertion. An independent review of the record shows the ALJ's comments regarding Plaintiff's recovery from back surgery include a fair summary of FNP Durant's notes, including that while Plaintiff had difficulty going up on his heels, he was able to go up on his toes and his straight leg raise was negative. Tr. 17, 704. The ALJ also points to follow up scans conducted on Plaintiff's spine showing only "mild degenerative changes of the lumbar spine." Tr. 20, 718.

Next, Plaintiff claims the ALJ failed to provide any explanation for why he rejected FNP Durant's "disabling finding that [Plaintiff] would be off-task 20% of the time due to concentration deficits from pain and sedation side effects of medications." Pl. Br. at 11; Tr. 722. First, as the ALJ pointed out, the estimate that Plaintiff would be off-task 20% of the time is inconsistent with exams conducted by FNP Durant showing only "transient increased symptoms at times." Tr. 19. Additionally, in the same form wherein she opined the 20% off-task limitation,

FNP Durant assessed that Plaintiff had only "mild sedation" resulting from medication use. Tr. 722. Indeed, by Plaintiff's own testimony, he can maintain concentration to finish tasks, although he does feel "some memory loss is occurring." Tr. 204. *See also* Tr. 186, 225.

In sum, the ALJ did not err in finding FNP Durant's assessment unpersuasive. The ALJ evaluated the supportability and consistency of FNP Durant's medical opinion and provided adequate reasons for rejecting her assessment.

### III.    Lay Witness Testimony

Plaintiff argues the ALJ erred in failing to provide germane reasoning for rejecting lay witness statements from Plaintiff's stepsister, Plaintiff's son, Plaintiff's son-in-law, Plaintiff's daughter, and Plaintiff's future son-in-law. Pl. Br. at 13-14; Tr. 263, 266, 272, 274, 276. "Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. § 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. § 404.1520c(d). Under the new regulations, however, the ALJ must still articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F.Supp.3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina, 674 F.3d at 1114*, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for

rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

In this case, the ALJ noted "six[5] submissions by third parties in support of [Plaintiff's] Title II application." Tr. 16. The ALJ stated the submissions all contain similar descriptions of Plaintiff's health limitations, but ultimately finds the statements to be of "limited probative value." Tr. 16. The ALJ concluded Plaintiff's RFC, consisting of a "limited range of sedentary work," sufficiently addresses the degree of debilitation included within the letters of support. Tr. 16. The Court agrees. Furthermore, because the lay witness testimony describes limitations already described by the Plaintiff, and the ALJ properly discounted these limitations, any error by the ALJ in failing to discuss the lay testimony is harmless. *See Molina*, at 1122.

## IV.   Step Four Evaluation

Plaintiff's final argument that the ALJ erred in his Step Four evaluation similarly fails. A Plaintiff is not disabled if he retains the RFC to perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." Social Security Ruling ("SSR") 82–61, 1982 WL 31387, at *2; *see also* 20 C.F.R. § 416.920(f). At Step Four, the ALJ is required to make the requisite factual findings to support his conclusion that Plaintiff can perform past relevant work. *Pinto v. Massanari,* 249 F.3d 840, 845 (9th Cir.2001).

---

[5] One submission is unsigned and unattributed to any witness and Plaintiff does not argue the unsigned submission should be taken into consideration. Therefore, the Court will only consider the five signed submissions.

This requires three things: (1) A finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to her past job or occupation. SSR 82–62, 1982 WL 31386, at *4; *Pinto,* 249 F.3d at 845.

In this case, the ALJ noted that Plaintiff is "limited to a reduced range of work at the sedentary level of exertion." Tr. 21. Based on vocational expert (VE) testimony, the ALJ then determined the physical and mental demands of Plaintiff's last job as Supervisor II or "project director" were consistent with the sedentary level of exertion outlined in the RFC. Tr. 21. Finally, the ALJ concurred with the VE's testimony that Plaintiff was "capable of performing past relevant work." Tr. 21. Plaintiff argues that the ALJ provided an incomplete hypothetical to the VE when assessing Plaintiff's RFC limitations. Plaintiff contends that when "presented with limitations supported by the improperly rejected medical opinion evidence and testimony" the VE determined Plaintiff would be competitively precluded from employment. Pl. Br. at 18. Plaintiff's reliance on the rejected symptom and medical evidence is misplaced. As discussed in Sections I and II above, the ALJ properly rejected both the symptom testimony as well as the medical opinion testimony from FNP Durant. Therefore, the ALJ did not err in his Step Four finding that Plaintiff was capable of performing past relevant work.

///

///

///

///

///

///

16 – OPINION & ORDER

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:___January 29, 2024_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge